May it please the Court, good morning. My name is Brent Whittlesey. I'm appearing today as an Assistant United States Attorney on behalf of the Federal Medicare System, which is the victim entitled to restitution in this case. The issue that the Court needs to address in this case is whether community property funds that are deposited to secure a criminal defendant's bond should be applied to the criminal defendant's restitution debt. I want to start by noting that there is really no doubt in this case that the funds that were deposited by Hoang Luong to secure the release of her husband on bond in the amount of $500,000 constituted community property. I think you're absolutely right about that, Mr. Whittlesey, that the funds have long been released and then there's a subsequent civil action. Was that a civil forfeiture action? No, Your Honor. What's the civil order that is in the record? Your Honor, there was a motion filed by the United States pursuant to Section 2044 of the Judicial Code. And that was filed in the criminal action? Correct, Your Honor. And then the notice of appeal from that was filed in the criminal action? That's correct, Your Honor. And that was untimely because that was filed 60 days, which is the rule for when you file a notice of appeal in the civil action, and you filed it in a criminal action. Your Honor, there are many cases that this Court has decided that concern notices of appeal in civil matters that arise in the context of a criminal case. Right. But this is a – this is – you filed a motion. You didn't file a civil action. Didn't need to file a civil action. That's right, Your Honor. Right. But what you filed was a motion in a criminal action. But, Your Honor, this Court has held in Vaccaro that where there is a bond forfeiture action filed in the criminal case and there is an appeal of that. But you didn't file a bond forfeiture action. No. We filed a motion to apply bond funds. Right. But that's something different. That's not an action. It doesn't have its own separate procedures or time limits or anything that would be similar to a forfeiture action. Well, no. A bond forfeiture motion would be filed in the criminal case, Your Honor, under the criminal number. Pursuant to Rule 46. Are you talking about your 2044? Pursuant to Rule 46 of the Federal Rules of Criminal Procedure. Right. But Rule 4 doesn't talk about motions. Rule 4 talks about actions. 46, Your Honor. It pertains to bond forfeiture. But 4 talks about when a notice of appeal is timely. Yes, that's right, Your Honor. Let's get to the bond. Let's say, okay, I think your argument is very creative, but wrong. But assume you're right. And I don't see how you can prevail under 2044 after you stipulated to exoneration of the bonds and the money was released. We didn't stipulate, Your Honor, to the we didn't stipulate away our rights under 2044 to have the bond. We stipulated to exoneration of the bond. What does that mean? That means, Your Honor, that the defendant is no longer required to post the bond to secure his appearance. Right, so he gets the money. Or she gets the money. Or the court has to determine who gets the money. The money's gone. Well, it wasn't gone. You let the money go. I mean, I understand the whole little clerk thing that happened and the delay in letting the money go, but the money left. Okay, so the money's gone, but nonetheless, you filed, what did you file? There is a civil docket number. There's a civil docket number because we filed an application for a writ of garnishment on a bank account at Washington Mutual. Okay. And that arose following the court's ruling on the 2044 motion. We garnished the account into which the surety had deposited the funds, and the clerk assigns a separate civil. Right, that's a civil action, so that's why the clerk did that. But anyway, so you got a garnishment of a portion of the funds. $77,000. So, because that was all that was in the bank. She transferred all the other money out of the bank. So doesn't that move your other action? No, Your Honor, because this court has held that where funds are paid pursuant to a judgment that's subsequently reversed, the court can and, in fact, should order that the funds be repaid. How could we possibly order relief under 2044? What you can order and what we request that you order is a remand to the court below with directions to enter a judgment determining that the funds should be applied under 2044 and directing the defendant to redeposit the funds with the clerk. 2044 does not provide for that. Well, this court has the authority to do that pursuant to the cases that we've cited pertaining to relief, Your Honor. Now, assuming that the court does believe that these funds are community property, it's very clear under this court's authorities that community property may be accessed by the United States to satisfy a criminal restitution judgment. Why didn't you bring a civil forfeiture action or a criminal forfeiture action in naming the husband and wife? Then you could attach all of their funds. Well, there were several forfeiture actions in this case, Your Honor. There was the forfeiture of a Lamborghini. There was the forfeiture of a yacht. There was the forfeiture of a luxury residence. The $500,000 was not the subject of a forfeiture action because it was not proceeds of criminal activity so far as we could prove, and it was not an instrumentality. Those are the requirements for a forfeiture action. So in the debt collection business on behalf of the United States. Which is your area, right? Debt collection, not forfeiture, right? So we have a broader net, in other words, to apply to a defendant's property than does the asset forfeiture section of our office. Why didn't you immediately bring, why did you delay in bringing that 2044 motion? I brought it as soon as I knew that the bond had been exonerated, Your Honor. We don't bring a 2044 motion unless and until we find that there are funds that are about to be repaid to a defendant or to a surety. And in this case, we did it promptly when we were notified that the surety had requested the return of her $500,000. Once the district court has ordered the funds released, how does 2044 then apply? Can you explain that? Well, in this case, Your Honor, the district court did not order the funds released before 2044, before ruling on the 2044 motion. It ordered exoneration. Isn't that the same thing? In other words, they're released. Why is that different? I don't think that it is the same thing, Your Honor. The exoneration, to my understanding, simply means that the funds are no longer required to be posted for the defendant's bond to secure his appearance. So they're no longer deposited for the bond, which seems to be the 2044 language. So they're still in the possession of the district court. As a bailee, though, because they're not deposited for the appearance bail bond. That was my confusion looking at 2044. Right. And the way that these matters typically arise in the criminal practice is that the defendant is sentenced. The court sets a surrender date. The defendant meets the surrender date. The defendant applies for exoneration of the bond upon surrender, and that's done at sentencing. Bond exonerated upon surrender is what the district court usually says. And he surrendered, and it was ordered exonerated. Right. And then it says, the 2044 says, money belonging to and deposited by or on behalf of the defendant for the purpose of a criminal appearance bail bond. So it was no longer being deposited for that purpose. It was just being held according to their own internal procedures. It was still deposited by or on behalf of the defendant. So that's how you interpret it as still being applicable? Yes. Yes, Your Honor. Exactly. Did the district court have jurisdiction to strike the notice of appeal? We do not believe so. We believe that only this court can determine its own jurisdiction. The filing of the notice of appeal is a jurisdictional event in the case. It transfers jurisdiction to this court. There's some exceptions to that, right? There are exceptions. If it's invalid on its face. Invalid on its face. Yes, Your Honor. Well, certainly, Your Honor, the mere fact that it's filed in a criminal action does not. The plain language of Rule 4 says that. It says, in a civil action and in a criminal action. Orders from bond forfeiture motions are filed in a criminal action. And they're governed by the 60-day rule. Can you cite me one case where, because I know the district court cited cases where, you know, these were filed in a criminal action. Can you cite me one case where this motion was filed in a criminal action? The Rule 2040. And a notice of appeal was filed 60 days later, and that was held timely. There is no such case that I've found, Your Honor. I don't know if the government's ever tried that one before. Well, we've filed many 2044 motions. Right. But you always bring the – if you have a notice of appeal, you bring it within the 30 days required by the criminal action provision of Rule 4. Actually, I'm not aware of any appeal of a 2044 motion, Your Honor. You usually get the money turned over because it's usually timely. There's not an appeal? Right. And this one, for some reason, got delayed. Right. So we believe that the correct analogy is to the bond forfeiture motion in Vicaro, which is filed in the criminal case and has a 60-day time limit, to the motion to remit a bond, which is discussed in United States v. Sar-Avi, which is filed in the criminal case and is a 60-day time limit, and to United States v. Bronstein, which is order awarding fees to a criminal defendant under the Hyde Amendment. This Court has held that even though that's filed in the criminal case, it's a civil matter arising in the context of the criminal case, and it's a 60-day time limit. And unless the Court has other questions, I'll reserve my last four minutes. I just had one question with regard to the stipulation to exonerate. Was that – were you involved at that point? You weren't involved. No, Your Honor. That was the criminal assistant. Right. And for some reason, they actually affirmatively entered into a stipulation that upon remand, custody, the bond would be exonerated. That's correct, Your Honor. Is that typically done, you think, that stipulation like that? I think that's atypical. I think it's usually done orally in court. So for some reason, there's some – that was done, and we probably don't know exactly why at this point. I do not know why, Your Honor.  Thank you. Good morning, may it please the Court. My name is Stanley Greenberg. In reading the briefs, I don't have that much to say, and I don't intend to address the statute of limitations issue unless someone on the Court has some questions. I'd like to respond briefly to the other of the substantive issues, if I may. First of all, the situation with the bond, Your Honor, is not quite correct. If you look at Judge Cornyn's order, which is at page 2 of the government's excerpt, where the judge specifically says there was a stipulation exonerating her bond and directing the return of the proceeds. And if you look at the transcript of the hearing, it's very plain Judge Cornyn was extremely upset by the fact that he had ordered the bond exonerated, fully expected it to be returned to his attorney, and he was very upset by that. Now, the government's a creditor in this case, and I think this is a pretty simple issue. You've got a statute that says the government can move to forfeit money that belongs to the defendant, but it does not apply to third parties. And you've got a memorandum of understanding between the clerk, the probation office, and the U.S. attorney which specifically says you don't use this motion when there's third-party bonds involved. And if you think about it for just a minute, there's a lot of good reasons for that. In this case, the government brought this motion claiming it's community property, which is basically turning the district court into a family law court, having to make determinations of that. The government's theory is if the defendant has an interest, they can move to apply the cash bond to the forfeiture. Well, suppose the defendant's parents put up a cash bond, and then they get killed in an automobile accident. Is the government going to be able to move to forfeit this money on the theory that he's an heir, and therefore he has an interest in it? Are we going to turn the federal court into a probate court? Does that mean all the other heirs and creditors are going to have to come in? I don't think so. We have the government's creditor, and they have the right to avail themselves of creditors' remedies. But this statute is very plain. Well, if they had made their 2044 motion, so you're saying, if they had made their 2044 motion timely while the bonds were still, while the money was still being held for the purposes of securing his appearance. I'm sorry, I can't quite hear you, your voice is so soft, I couldn't hear you. I'm sorry, if they had made the motion, the government had made the motion while, before the bond was exonerated, your argument is they still wouldn't have been entitled under 2044, because the money was in her name. They would first have to go take some other action to prove that the money belonged to him. That's right. What would that action be? Well, the garnishment that he told you about, the government availed itself of it as a remedy. The government could have put a garnishment on the bail, I suppose, but the government garnished the bank account, and there was a hearing to determine whether it could be applied to the defendant's restitution order or not, and there was some arguments whether it was community property or not, and the government prevailed as to that $77,000. So the government has other remedies. The point Judge Carney made was maybe you're entitled to this money, but not in this proceeding, not under 2044. You just brought it under the wrong statute. And I think it turned out he was right. The government originally complained that Judge Carney erred in not applying community, state law, community property. But if you look at the reply brief, obviously Judge Carney did do it once it was brought in the correct proceeding. It's just 2044 only applies to cash deposited by a defendant, not by a third party, and you can see from the mishmash that this has created why Congress must have had that in mind. To me, I think the plain language of the statute argues it, and it's also plain from that memorandum of understanding in the defendant's excerpt that the U.S. attorney signed on to an agreement saying this applies only when the defendant put up the money. I'm not sure I understand why, had the 2044 motion been timely, or assuming it was timely, the court was precluded from making a determination as to whether the money was belonging to the defendant. Because as I look at 2044, it just says that the court shall order any money belonging to and deposited by or on behalf of the defendant. So if this was community property money that, under California law, belonged to the defendant or was eligible for paying his debts, and it was certainly deposited on behalf of him, why the district court would be precluded from making that determination? Because the statute says this doesn't apply to third-party sureties. But the court would then make the determination whether it was a third-party surety or whether the money belonged to the defendant, which is in the ---- I don't think the surety status changes depending on the nature of the money. A third-party surety is a third-party surety. It's someone other than the defendant by definition, by statute, and by the government's own agreement in the memorandum of understanding that is in exhibit in this case. So I think that's your answer. But there are other remedies available to the government, as Judge Wardle asked, as varnishment. How then do you interpret the language that the money could be deposited on behalf of the defendant? Well, it's in the ---- I believe it's in the conjunctive. It has to belong to him and be deposited by or on behalf of the defendant for the purpose of criminal appearance bail bond. So the community property money under California law assumed belonged to the defendant, then it was deposited on behalf of him. Why doesn't that meet the plain language of the statute? Because of the last section, the last sentence of that statute, Your Honor, which says this section should not apply to any, any third-party surety. The wife was a third-party surety. I mean, maybe it was community property. And the government had other remedies to bring that, and the government did bring it in another proceeding and prevail. At least that's 77,000. The problem I think the government has is that by the time it did avail itself of that remedy, she had already transferred a lot of the money out of the United States. Well, why couldn't the government have just garnished it in the court's office? I don't know. I mean, it seems to me the government acted delayed, and that's why it lost its opportunity to get the money. I'm sorry. I still didn't hear you. Maybe the government delayed. I don't know why it took them so long, but they lost their opportunity to get the money on behalf of the United States. Well, the government presumably knew about it because there was a stipulation in November when the defendant surrendered that the bond should be exonerated and returned to him. And the government didn't file this motion, I think, until sometime in December And eventually it got heard, I think, in late January. There was about a two-month delay, maybe even a little more, if I recall. But I think the plain language of the statute is the answer, coupled with the memorandum of understanding where the government says this shall not apply to any third party. So why is the wife a third-party surety? Because she carried the money in? Because she's someone other than the defendant. But what if the defendant got a friend of his, gave him some money and said, I want you to come in and bring this in and put it up on my behalf. It's my money. Does that then? If the defendant says it's his money, did I hear it? If it is. Or if the friend says it's his money. Well, if the defendant gets the money, gives it to a friend, and the friend comes in and deposits for him, then would that person be a third-party surety and thus the money not subject to attachment? Well, you've asked two questions. First of all, I still think he's a third-party surety because he's a third party. So you just have to get someone in there in the middle. All you need is some intermediary to come in and then that protection arises is what you're saying. It sounds like. Well, that's what Congress said. I'm not saying that. That's the way I interpret the statute. The second part of your question, Your Honor, when you said is it subject to attachment, do you mean under 2044 or some other statute? In any context. In other words, you're saying that this money is not available to the government because it was posted by a third-party surety. That's right. And I'm wondering, hmm, in that situation, if all it is is the fact that a third party was the one that brought the money in, I'm just wondering if that really makes sense, if that's the only reason because a third party who happened to be the wife and it happened to be community property, which may, in fact, under California law, be his money, she effectively just brought his money in, posted it, and because she acted in that capacity, the money is now somehow different than had he brought it in himself. Well, in this case, it was plain, and Judge Carney even commented on it, and the government signed off on this bond as being the wife's sole and separate property two years earlier. So that was with the court's understanding. It was my understanding. It was the government that signed off on that, accepted the bond on that basis. Two years later, the government stipulates to the release, the exoneration, the return to the wife, and then a different section of the U.S. Attorney's Office says, no, we're going to go after her in 2044. And the argument is 2044 doesn't apply because she's a third-party surety, but there are other remedies available. It's not like the government has no remedies here. I think that is what troubled Judge Carney was the prior stipulation with the government. I'm sorry. I'm just having so much trouble hearing you. Long week. I think that was what was troubling Judge Carney was the government's inconsistent positions, that they had agreed it was separate property. And I guess the other thing, the reason I would imagine Congress had said that this section doesn't apply to funds from a third-party surety is they're thinking of all the bail bondsmen, that the government can't use monies that were, you know, from the bail bonds people to satisfy the restitution obligation of the criminal defendant. Not under 2044, I think that's right. Right. But I would, I'm sorry, were you finished, John? Yeah. I would respond to Judge Beislein. Beislein. Beislein. You know, I asked her the correct way to pronounce it, and she led me astray. I'm sorry, Your Honor. The only thing I would address Your Honor to is I cited it in page 20 of our brief, is the quote from the Acquere case where this same issue came up, and the court said, listed a lot of harms and said, the use of the third party's bail money should be limited to its core purpose, to secure a defendant's appearance in court. Once that purpose is satisfied, the third party's money should be promptly returned. And they went on to say there's other remedies available. It's just not under that statute. Unless the court had some questions. I see I have about two and a half minutes left. Thank you. Under Mr. Greenberg's approach, if a defendant hands the money to a friend and the friend posts the bond, then the government can't access that for restitution. I submit that that's just not an appropriate construction of the statute. The question is what third party surety means. We believe that third party surety means somebody who is posting money that doesn't belong to the defendant. And as Judge Akuda noted, this money belonged to the defendant because it was community property. I also submit that we weren't too late in pursuing this matter. The money was still in the registry of the district court at the time we filed the 2044 motion. The court had authority over the money and had authority to determine how the money should be dispersed. And that's all that we requested in the motion under Section 2044. Thank you very kindly. Thank you. Thank you very much, counsel. Two quick points. Did you have any time left? I have about two hours and 40 seconds. I hope not. Two minutes. I'll just be very brief. First of all, the reason the money was still in the court's registry, which was documented in the court file, was because of the secret agreement between the financial litigation unit of the U.S. Attorney's Office and the clerk's office that delayed the return of the money to give him time to file that motion. Does that still exist? Is that still an operative MOU? It is. Unless it's part of the record. I assume you've seen it, and I believe it is. And the second point I would make is it is not our position, if a friend walks in and gives the money, that the government cannot access it. The question is under what procedure. I mean, I just go by the plain language of the statute. If Congress wanted to say, you know, that situation would apply under 2044, they're more than capable of doing it. Maybe they should amend it. But going by the plain language of the statute, it simply does not apply to third parties. If you start trying to interpret who's a third party, we're getting on a slippery slope. It's a very bright-line rule, I believe. Thank you. All right. Thank you, counsel. U.S. v. Belong is submitted, and we'll take it. Timothy de Hernandez de Redondo Beach v. City of Redondo Beach.
judges: Wardlaw, Ikuta, Beistline